1  **WO**

2

3

4

5              IN THE UNITED STATES DISTRICT COURT

6                 FOR THE DISTRICT OF ARIZONA

7

8   Stonecreek Building Company, Inc.,    )   No. CV-09-1307-PHX-MHM
                                          )
9              Plaintiff,                 )   **ORDER**
                                          )
10  vs.                                   )
                                          )
11                                        )
    Plastech Holding Corporation, James A.)
12  Brown, Julie N. Brown, Harris Trust and)
    Savings Bank,                         )
13                                        )
               Defendant.                 )
14                                        )

15  _____

16
         Currently pending before the Court are James and Julie Brown and the Plastech Holding
17
    Corporation's Motion to Dismiss for Lack of Personal Jurisdiction, (Dkt.#5).    After
18
    reviewing the pleadings and determining oral argument unnecessary, the Court issues the
19
    following Order.
20
    **I.    BACKGROUND**[1]
21
         James and Julie Brown, a married couple, are citizens of the State of Michigan. Julie
22
    Brown is the owner of Plastech Engineered Products, Inc. ("PEPI"), a Michigan based
23
    company that supplies plastic components to the automotive industry. At the peak of its
24

25  _____

26      [1]The recited facts in this Order reflect the standard of review for factual allegations
    raised in a motion to dismiss for lack of personal jurisdiction, and do not necessarily indicate
27  how the Court would treat factual allegations raised in a motion for summary judgment. See
    Am. Telephone & Telegraph Co. v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th
28  Cir. 1996) (citing WNS, Inc. v. Farrow, 884 F.2d 200, 203 (5th Cir. 1989)).

operations, PEPI employed over 8,000 individuals.  James Brown, a former attorney at one of the largest domestic automobile manufacturers, was employed by PEPI as a corporate officer from 1997 through 2008.

At some point before September 2003, the Browns personally purchased a piece of land in Carefree, Arizona. The land contained two adjoining lots. Located on one lot is what Plaintiff describes as a luxury home. The adjacent lot was at the time vacant.  According to Plaintiff, the Browns thereafter built a 6,000 square foot residence on the once vacant lot. In September 2003, the Browns apparently transferred the newly constructed residence ("the Carefree residence") to the Plastech Holding Corporation ("PHC"), a corporate entity with no employees that is wholly owned by Julie Brown. The Browns allege that PHC holds commercial real estate assets—mainly industrial facilities—used by PEPI, and that the Carefree residence was purchased to be used by PEPI as a training facility for its employees. Plaintiff alleges that PHC is a nothing more than a corporate shell used by the Browns to hold their personal assets.

Plaintiff Stonecreek Building Company, Inc. ("Stonecreek") is an Arizona construction company. In March 2005, Stonecreek contends that it entered into an oral contract with the Browns and PHC to renovate the Carefree  residence.  Stonecreek alleges that this oral contract was formed between a man named Eddie Catanzaro, who was acting as an agent of the Browns and PHC, and Stonecreek's President, Joseph Costello.  Catanzaro apparently told Stonecreek to direct all payments to PHC.  All of the negotiations between Costello (on behalf of Stonecreek) and Catanzaro (on behalf of the Browns and PHC) took place in the state of Arizona. It is also contended that the oral agreement called for the Browns and PHC to pay Stonecreek the cost of the work plus 15% profit, plus an hourly rate for the services of  Costello.  The agreement supposedly spanned 27 written applications for payment by Stonecreek totaling more than $4 million, 22 of which were paid by either PHC or the Browns. Stonecreek further maintains that the Browns personally paid over $300,000 of the total amount of services based the alleged oral contract.

In 2006, Eddie Catanzaro, the purported agent of the Browns and PHC, died.  At that

point, Stonecreek alleges that the Browns, as well as Julie Brown's secretary, Lane Myer, became more personally involved in overseeing the renovation work Stonecreek was performing at the Carefree residence, as well as directing the payment schedule. Evidence of the Browns' heightened involvement can be found in the exhibits Stonecreek has attached to its response brief. These attachments include a February 2007 email exchange between Myer, Costello of Stonecreek and Julie Brown, which shows Julie Brown exerting a certain amount of managerial control over the renovation process, among other things.

Stonecreek alleges that its invoices were continuously paid until late 2007, when the PEPI company began to experience financial problems related to the economic challenges facing American automakers. In February 2008, PEPI filed for Chapter 11 bankruptcy in the Eastern District of Michigan. See In re Plastech Engineered Products, Inc., Case No. 08-42417 (PJS) (E.D. Mich.). Stonecreek was not listed in any of the creditor schedules filed by PEPI in its bankruptcy proceedings. Notwithstanding PEPI's bankruptcy filing, via email communication, Julie Brown supposedly personally reassured Stonecreek that the Carefree residence was not affected by the PEPI bankruptcy and encouraged Stonecreek to continue working on the renovation project. Stonecreek contends that it continued working on the project in reliance on Julie Brown's assurances that it would be properly compensated, while at the same time PHC or the Browns continued to make partial payments to Stonecreek.

Stonecreek alleges that in 2008 Jim Brown became more directly involved in managing the Carefree renovation project; that he participated in several phone conferences and meetings with Stonecreek, exchanged numerous emails with Costello and involved himself in several cost related disputes with Stonecreek and Costello concerning the timeliness and quality of Stonecreek's work and Stonecreek's accounting practices. Stonecreek's allegations are also supported by numerous emails exchanged between Costello, Myer and James and Julie Brown during 2008.

In addition, although the Browns and PHC maintain that the residence—which was owned by PHC—was to be used as a PEPI training facility, Stonecreek points to numerous statements made by the Browns that belie Defendants' contention. Specifically, Stonecreek

notes that in email communication between it and Defendants, Julie Brown referred to the master bedroom as "my bedroom," and called another room in the house "Steven's room," and "Angie's closet," apparently referring to the Brown's two children, Steven and Angela. Julie Brown's secretary, Myer, likewise listed the Carefree residence as the "Brown Residence" in a document titled, "scope of remaining work."

On March 10, 2009, Stonecreek filed suit in Maricopa County State Court against Plastech Holding Corporation, James A. Brown, Julie N. Brown, and Harris Trust and Savings Bank for breach of contract (Count I), unjust enrichment (Count II), promissory estoppel (Count III), and foreclosure of a mechanic's lien (Count IV). On June 18, 2009, Defendants removed the case to federal court, and subsequently sought dismissal of the Browns and PHC on the grounds that the Court cannot properly exercise specific personal jurisdiction over them.

## II. PERSONAL JURISDICTION

### A. Legal Standard

To establish personal jurisdiction, the plaintiff must show that: (1) the forum state's long arm statute confers jurisdiction over the nonresident defendant and (2) the exercise of jurisdiction comports with the principles of due process. Omeluk v. Langsten Slip & Batbyggeri A/S, 52 F.3d 267, 269 (9th Cir. 1995). Arizona's long arm statute confers jurisdiction to the maximum extent allowed by the Due Process Clause of the United States Constitution. Ariz. R. Civ. P. 4.2(a); Doe v. Am. Nat'l Red Cross, 112 F.3d 1048, 1050 (9th Cir. 1997). Therefore, the issue before the Court is whether the exercise of jurisdiction over Defendant accords with the Due Process Clause. See Omeluk, 52 F.3d at 269.

Where an evidentiary hearing is not held, dismissal for lack of personal jurisdiction is appropriate only if the plaintiff has not made a prima facie showing of personal jurisdiction. Fields v. Sedgwick Associated Risks, Ltd., 796 F.2d 299, 300 (9th Cir. 1986). "Uncontroverted allegations in [the plaintiff's] complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists."

Am. Telephone & Telegraph Co., 94 F.3d at 588. However, a court may not assume the truth of allegations in a pleading that are contradicted by affidavit. Data Disc., Inc. v. Systems Tech. Assoc., 557 F.2d 1280, 1284 (9th Cir. 1977). If the plaintiff is able to meet its prima facie burden, the movant can nevertheless continue to challenge personal jurisdiction either at a pretrial evidentiary hearing or at trial itself. Metropolitan Life Ins. Co. v. Neaves, 912 F.2d 1062, 1064, n.1 (9th Cir. 1990).

Due Process requires that a nonresident defendant have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal citation omitted). There are two types of personal jurisdiction: general and specific. Perkins v. Benquet Consol. Mining, Co., 342 U.S. 437, 445 (1952). General jurisdiction exists where a non-resident defendant engages in substantial, continuous or systematic activities within the forum. Id. When a court has general jurisdiction over a defendant, the defendant may be hailed into that court for any claim, even one that does not arise from the defendant's contacts with that jurisdiction. See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984). However, when a defendant's contact with the forum does not rise to the level required for general jurisdiction, a court may have specific jurisdiction when the asserted claim arises from the defendant's activities within the forum. Shute v. Carnival Cruise Lines, 897 F.2d 377, 381 (9th Cir. 1990), rev'd on other grounds, 499 U.S. 585, 111 S. Ct. 1522 (1991). Specific jurisdiction exists when (1) the non-resident defendant purposefully directs its activities or consummates some transaction with the forum or a resident thereof; or performs some act by which it purposefully avails itself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim arises out of or results from the defendant's activities in the forum and (3) exercising jurisdiction is reasonable. Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir. 1987). Here, Stonecreek is not alleging that PHC or the Browns should be subject to general jurisdiction in the State of Arizona, and therefore the only current issue is whether the Court may properly exercise specific jurisdiction over these Defendants.

**B. Discussion**

The first element, purposeful availment, is met when a defendant enters into a contract that creates a continuing obligation to a resident of another state, such that a defendant has purposely availed himself of the benefits and privileges of that state and should reasonably expect to be hailed into court there. See Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995); Hirsch v. Blue Cross, Blue Shield of Kansas City, 800 F.2d 1474, 1478-79 (9th Cir. 1986). Obviously the extent and nature of the relationship between Stonecreek and the Defendants is very much in dispute; that issue lies at the center of this litigation. Stonecreek claims that an oral contract for personal services existed between it and the Browns, as well as the Brown's real estate holding company, PHC.[2] The Browns dispute the existence of such a contract, and contend that Eddie Catanzaro was not their agent and did not have either the actual or apparent authority to bind the Browns to any contractual relationship with Stonecreek. In the alternative, to the extent any contractual relationship existed, the Browns contend that they were not personally liable, since they were at all times acting in their capacity of officers of PEPI and owners of PHC. The Court notes that the existence and terms of the alleged oral contract is a merits determination, one that is not appropriate for resolution in a personal jurisdiction order. Whether a valid contract for personal services was ever formed is not an issue currently before the Court. Whether the Browns are parties to any contract, or whether the Browns may be held personally liable for PHC's contractual obligations under an alter ego or a corporate veil theory is similarly not before the Court. See Dietel v. Day, 492 P.2d 455, 457 (Ariz. Ct. App. 1972) ("[t]he corporate fiction will be disregarded when the corporation is the alter ego of the business conduit of a person, and when to observe the corporation would work an injustice. The alter-ego status is said to exist

---

[2]Notwithstanding the existence of the oral contract that Catanzaro supposedly formed on behalf of the Browns and PHC with Stonecreek, Stonecreek maintains that it detrimentally relied on a direct promise made to it by Julie Brown and seeks to recover the damages it incurred while relying on that promise. This cause of action is independent to Stonecreek's breach of contract claim.

when there is such unity of interest and ownership that the separate personalities of the corporation and owners cease to exist."); Deutsche Credit Corp. v. Case Power & Equipment Co., 876 P.2d 1190, 1196 (Ariz. Ct. App. 1994) (noting that courts consider "the corporation's failure to "maintain the formalities of separate corporate existence; . . . plaintiff's lack of knowledge of separate corporate existence; and [the] commingling of personal and corporate funds").

Resolving the issue of personal jurisdiction does not require the Court to reach the disputed issues relating to the underlying merits of the lawsuit. At this stage, the Court is only concerned with the nature and quality of the Browns and PHC's contacts with Arizona, whether those contacts were purposeful in nature or merely fortuitous, and whether it comports with our basic principles of constitutional fairness to require them to defend a lawsuit in this forum. As the Ninth Circuit has stated, the purposeful availment test "is based on the presumption that it is reasonable to require a defendant who conducts business and benefits from his activities in a state to be subject to the burden of litigating in that state as well." Brainerd v. Governors of the University of Alberta, 873 F.2d 1257, 1259 (9th Cit. 1989). Using this principle, Stonecreek has produced sufficient evidence to show that the Browns and PHC benefitted from their activities in Arizona and may be properly held to account for their forum related activities. The Browns initially purchased the lot upon which they built the residence in Carefree, Arizona. They then sold the completed house to PHC, a company that Julie Brown owned in full and had no employees. At various times, both Julie and James Brown directly controlled the renovation process taking place in Arizona, frequently communicating over email and via telephone with Stonecreek. There is also evidence that Julie Brown made representations concerning the payment schedule and encouraged Stonecreek to continue working despite PEPI's bankruptcy filings, and that James Brown attempted to barter with Stonecreek to implement changes in Stonecreek's accounting practices and the price of the work being performed. There is also some evidence, which the Court acknowledges for purposes of ruling on the instant motion, that the Browns may have intended to use the renovated Carefree residence as a personal home,

despite its corporate character. When viewed in its totality, the presence of such evidence is enough to permit the Court to determine that the Browns and PHC purposely availed themselves of Arizona. Their extensive contacts with an Arizona business who was working to renovate an Arizona home owned by their privately held corporation (a home that was previously titled to them personally) should have indeed alerted the Browns to the possibility that they might have to one day defend themselves against a lawsuit concerning Stonecreek's renovations in an Arizona court. In fact, the question of whether or not the Brown's purposefully availed themselves of the benefits and privileges of the forum state is not one that the Court finds to be particularly close.

With respect to the second element of specific jurisdiction, the Court must consider whether Stonecreek's claims arise out of Defendants' contacts with Arizona. Under prevailing Ninth Circuit law, a claim arises out of a defendant's contacts when the claim would not have arisen 'but for' defendant's actions in the forum. Panavision Int'l v. Toeppen, 141 F.3d 1316, 1322 (9th Cir. 1998). The 'but-for' test that is to be applied here, is easily met: but for the Browns and PHC's extensive interaction with Stonecreek in the Arizona forum, the claims embodied in the Complaint would clearly not exist.

The final element regarding specific jurisdiction asks whether the exercise of personal jurisdiction over the Brown's and PHC in an Arizona forum would be reasonable. There are seven factors that a court must consider when analyzing the reasonableness of exercising jurisdiction: (1) the extent of defendant's purposeful interjection into the forum state, (2) the burden on defendant, (3) the conflicts of the law between the forum state and defendant's home jurisdiction, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the controversy, (6) the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum. Terracom v. Valley Nat'l Bank, 49 F.3d 555, 561 (9th Cir. 1995). The court must balance and weigh all seven factors, but no factor is dispositive. See Ziegler v. Indian River County, 64 F.3d 470, 475 (9th Cir 1995).

As to the first factor, there is no doubt that the Browns, debatably acting in either their personal or corporate capacity, purposefully injected themselves into the Arizona forum.

They knowingly engaged in a variety of forum related activities over the course of 2008, and earlier, and should have considered the impact that their actions might have had in Arizona. See Dole Food Co. v. Watts, 303 F.3d 1104, 1115 (9th Cir. 2002);   Panavision Int'l v. Toeppen, 141 F.3d 1316, 1322 (9th Cir. 1998) (noting that when a defendant knowingly conducts activities in a specific forum, exercising jurisdiction is usually considered to be reasonable). As to the next reasonableness factor, the burden of forcing the Browns and their company to defend the lawsuit in Arizona, the Court finds that the weight of this factor is not significant enough to defeat personal jurisdiction. See id. at 1323.("[U]nless the inconvenience [to the defendants of litigating in the forum state] is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction."). Similarly, the Court cannot conceive of how requiring the Browns and PHC to defend this lawsuit in Arizona would conflict with the sovereignty or laws of their home state of Michigan, when the subject matter of the suit concerns an alleged contract for renovation work performed on an Arizona property. At the same time, Arizona has a recognizable interest in adjudicating disputes concerning Arizona land. See Sinatra v. Nat'l Enquirer, Inc., 854 F.2d 1191, 1200 (9th Cir. 1988).  As to the efficiency of adjudicating the lawsuit in the Arizona forum, the Court notes that efficiency will be best served by litigating the case in the current forum, since the Court is now generally familiar with the factual background to the litigation. See Marlyn Nutraceuticals, Inc. v. Improvita Health Prods., 663 F. Supp. 2d 841, 854 (D. Ariz. 2009) ("given that this Court is already familiar with the claims, facts, and parties involved, it believes that this efficiency of adjudication can most readily be achieved by leaving the case where it is . . .").  For similar reasons, there are no alternative forums that would be more appropriate than Arizona to settle this dispute.  The Court accordingly finds that the exercise of jurisdiction over the Browns and PHC in Arizona is reasonable.

In sum, an Arizona forum may properly impose specific personal jurisdiction over these Defendants, since the exercise of jurisdiction comports with due process principles of

1 | fairness.[3]

2 | **Accordingly,**

3 |     **IT IS HEREBY ORDERED** denying Defendants James and Julie Brown and the

4 | Plastech Holding Corporation's Motion to Dismiss for Lack of Personal Jurisdiction,

5 | (Dkt.#5).

6 |     DATED this 25th day of March, 2010.

_____
Mary H. Murguia
United States District Judge

---

24 |     [3]The Court will not presently rule on Defendants' argument relating to the statute of
25 | frauds since the issue appears to be one that is fact dependant and therefore inappropriate for
26 | resolution on a motion brought under Rule 12 of the Federal Rules of Civil Procedure.
Healey v. Coury, 783 P.2d 795, 799 (Ariz. Ct. App. 1989) ("If an oral agreement can
27 | possibly be performed within one year, the statute of frauds does not apply."). After
discovery has closed, Defendants are free to raise the issue in any forthcoming motion for
28 | summary judgment.